**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| STEPHANIE S. FRANCE, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )     Case No. _2:16cv 583_ |
| | ) |
| VIRGINIA PORT AUTHORITY, | ) |
| | ) |
|     **Defendant.** | ) |
| | ) |

## COMPLAINT

Plaintiff, Stephanie S. France ("Plaintiff"), by counsel, hereby alleges the following causes of action:

## INTRODUCTION

1.    Plaintiff brings this cause of action under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*, against Defendant, Virginia Port Authority ("VPA"), arising from VPA's failure and/or refusal to provide Plaintiff reasonable accommodations for her disability, VPA's termination of the employment of Plaintiff because Plaintiff opposed VPA's refusal to provide her reasonable accommodations, and VPA's efforts to coerce, intimidate, or threaten Plaintiff because Plaintiff exercised her rights under the ADA.

## JURISDICTION AND VENUE

2.    On November 4, 2015, Plaintiff timely filed a Charge of Discrimination against Defendant, Virginia Port Authority, with the Equal Employment Opportunity Commission ("EEOC") and, pursuant to a work sharing agreement, with the Virginia Division of Human Rights.

3.    On June 28, 2016, the EEOC issued a Notice of Right to Sue to Plaintiff.

4.     Plaintiff timely filed this action less than ninety (90) days after receipt of the Notice of Right to Sue on July 5, 2016.

5.     Jurisdiction of this action is conferred on this Court by 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5.

6.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the causes of action arise under the ADA, a law of the United States.

7.     Venue for this action lies properly in the United States District Court for the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred in the City of Norfolk, which is a territory included within those assigned to the Norfolk Division of the Eastern District of Virginia.

## PARTIES

8.     Plaintiff is a citizen of the Commonwealth of Virginia residing in the City of Virginia Beach, Virginia.

9.     Virginia Port Authority ("VPA") is a body corporate and a political subdivision of the Commonwealth of Virginia created pursuant to Virginia Code § 62.1-128 *et seq.*, with its central office located in Norfolk, Virginia.

## FACTUAL BACKGROUND

10.     On August 15, 2011, Plaintiff, then-known as Stephanie Allman, accepted the position of Economic Development Manager with VPA at an annual salary of $66,000.00 and VPA paid moving expenses for Plaintiff to relocate from Richmond, Virginia to Norfolk, Virginia.

11.     At the time VPA hired Plaintiff, Plaintiff reported directly to William Russell Young who reviewed Plaintiff's performance with input from his supervisor, Russell J. Held. Mr. Young and Mr. Held were responsible for signing Plaintiff's performance reviews.

12. On October 25, 2012, Plaintiff began dating Dave France.

13. Prior to dating Plaintiff, Mr. France was divorced from Catherine "Cathie" France. Mr. France and Cathie France have two children together and share custody of their children.

14. On or about May 2013, Plaintiff received a raise of 15%, increasing her annual salary to approximately $77,000.00, and an additional title of Port Incentive Administrator. Plaintiff continued to report to Mr. Young and Mr. Held.

15. On October 25, 2013, Plaintiff and Mr. France became engaged to be married and, shortly thereafter, discussed the marriage plans with the France children. Cathie France learned of the marriage plans from the France children and called Mr. France who confirmed those plans to her.

16. On November 12, 2013, VPA announced it was accepting applications for the position of Chief Public Affairs Officer.

17. In late November 2013, Plaintiff learned Cathie France was applying for the position of Chief Public Affairs Officer.

18. On December 9, 2013, Plaintiff met with Rodney Oliver, Interim Executive Director of VPA, and expressed concerns that her personal affiliation with Cathie France through her fiancé Mr. France would negatively impact her job in general and her work environment if VPA hired Cathie France. Mr. Oliver assured Plaintiff that she would be in a separate division from Cathie France, she would not have to report to Cathie France, and since travel is required for both positions, any interaction should be minimal.

19. On December 27, 2013, VPA announced Cathie France as the Chief Public Affairs Officer. Cathie France also became a member of the senior leadership team of VPA.

20.     Mr. France and others that have known Cathie France since high school, up to approximately 25 years, expressed concern for Plaintiff as Cathie France has a history of sabotaging people in her workplace and is known for lying and manipulation.

21.     Mr. France and Plaintiff discussed that Plaintiff would do everything she could to stay at VPA until her retirement was vested.  At VPA, retirement is vested after five (5) years of employment.  Mr. France and Plaintiff also agreed Plaintiff should document her concerns with Human Resources and her department head, Mr. Held.

22.     By e-mail dated December 30, 2013 from Plaintiff to Elizabeth Saxby, the Human Resources Director for VPA, Plaintiff documented her concern that her personal affiliation with Cathie France, through her fiancé, has the potential to impact her role and responsibilities at VPA. In addition, Plaintiff verbally shared with Ms. Saxby that disagreements between Mr. France and Cathie France in the raising of the France children had the potential to be brought into the workplace and any workplace issues could impact her home environment.  Ms. Saxby again assured Plaintiff that she would not report to Cathie France and that they were in two separate departments.  Plaintiff expressed to Ms. Saxby that she wanted to keep personal matters at home and work matters at work.

23.     By e-mail dated January 6, 2014 from Plaintiff to Mr. Held, Plaintiff again documented her concerns about Cathie France being in a leadership role at VPA and its potential to impact her position as a manager in the agency.

24.     By e-mail dated March 26, 2014 from Plaintiff to Jim Bibbs, the new Chief Human Resources Officer for VPA, Plaintiff requested a confidential meeting regarding her same concerns previously expressed about Cathie France.

25.     On or about March 27, 2014, Plaintiff met with Mr. Bibbs. Plaintiff advised Mr. Bibbs that she learned her department may be moved to Cathie France's division. Plaintiff further requested that she not be placed in Cathie France's division based on her personal affiliation through her fiancé Mr. France with Cathie France.

26.     On March 31, 2014, an interoffice memorandum announced that Plaintiff's department was being moved from reporting to the Chief Commercial Officer to the Chief Public Affairs Officer, Cathie France.

27.     Due to being required to report to Cathie France, Plaintiff began experiencing anxiety, depression, and insomnia. On April 1, 2014, Plaintiff advised her physician about her situation at VPA and her impairments. At this time, Plaintiff's physician prescribed the first of several medications to help Plaintiff sleep. These medications did not work.

28.     On April 3, 2014, Plaintiff again asked Mr. Bibbs if he was working on a solution for her or if the reorganization was final. Mr. Bibbs advised Plaintiff that the decision to move her department under Cathie France's division was final and there would be no accommodation for Plaintiff's request.

29.     Meanwhile, the requests of other employees of VPA, including, but not limited to, Bill Burkett and the Maritime Incident Response Team, to report to different divisions following the reorganization were granted by VPA.

30.     By e-mail dated May 27, 2014 from Plaintiff to Mr. Bibbs and Mr. Held, Plaintiff advised that Cathie France improperly discussed personal matters involving Mr. France's children while at work. Plaintiff reiterated her repeated requests to not report to Cathie France, whom she shares the responsibility for children.

31.     On or about May 29, 2014, immediately after Plaintiff sent her complaint about Cathie France to Mr. Bibbs, Cathie France denied Plaintiff resources critical to performing her job.

32.     Furthermore, Cathie France thereafter continually excluded Plaintiff from industry events that were directly related to her job, including, but not limited to, events with the Virginia Economic Development Partnership, Plaintiff's former employer and the coordinator of many prospect visits for potential employers that would use the Port of Virginia with Plaintiff's department.

33.     On June 21, 2014, Plaintiff married Mr. France.

34.     On July 3, 2014, after Plaintiff returned from her honeymoon, Plaintiff legally changed her last name to France. As a result, Plaintiff had her e-mail address with VPA changed. After changing her e-mail address with VPA, Plaintiff immediately began receiving questions from coworkers about her relationship with Cathie France, causing Plaintiff further discomfort.

35.     On July 10, 2014, Plaintiff was presented with a memorandum from Mr. Held, Ms. Saxby, and Mr. Bibbs entitled, "Warning." The memorandum addresses Plaintiff's complaints and concerns regarding her relationship with and line of reporting to Cathie France. The memorandum further describes Plaintiff's requests for accommodation as "insubordinate and unacceptable" and "it should immediately cease and desist." Finally, the memorandum threatens Plaintiff with termination and if she continues to make complaints regarding her reporting structure or talks about it to anyone inside or outside the office, she "should consider looking elsewhere for employment." Plaintiff was instructed to sign the memorandum.

36.     At this time, VPA removed Mr. Young as Plaintiff's direct supervisor. Instead, Plaintiff reported directly to Mr. Held, and Mr. Held and Cathie France would provide direct input into and sign Plaintiff's performance reviews.

37.     On July 23, 2014, Plaintiff provided a response to the July 10, 2014 "Warning" memorandum, refusing to sign the memorandum because it contains inaccurate representations. Plaintiff further requested clarification on several points, to which VPA never provided a response.

38.     By memorandum dated July 23, 2014, VPA reports that each division will be assigned a liaison to Human Resources.  Subsequently, Ms. Saxby is assigned as the Human Resources liaison to the Public Affairs Division.

39.     In December 2014, disputes escalated between Cathie France and Mr. France regarding Christmas visitation and communications.

40.     When Plaintiff returned to work on January 5, 2015, Mr. Held advised Plaintiff that she was being assigned as the project manager for a "special project" involving the Port of Richmond with Cathie France as her direct supervisor on the project.  Plaintiff expressed to Mr. Held that she was uncomfortable reporting directly to Cathie France.  Mr. Held recommended to Plaintiff that she should not refuse to work on the project because it would look like she was being uncooperative.  Plaintiff, therefore, reluctantly agreed to the assignment.

41.     In addition, shortly after being assigned as the project manager on the special project with Cathie France as her direct supervisor, in late January 2015, Plaintiff and Mr. France learned that allegations against Cathie France of sexual abuse of a minor child of her boyfriend, Kevin Heath Vick, arising from a shower incident in July 2013 were being raised in a custody hearing between Mr. Vick and his ex-wife.  Mr. France was asked to be a witness against Cathie France.  Plaintiff shared this news confidentially with Mr. Held and explained to Mr. Held that she was in a "no win" situation that is extremely stressful both at work and at home.  Plaintiff was concerned Cathie France would use her position as Plaintiff's direct supervisor on the special

project to punish Plaintiff for any position or action taken by Mr. France in pending custody litigation involving the Vick children and/or the France children that Cathie France did not like.

42.     After being assigned to the special project, Cathie France began undermining Plaintiff's ability to work on the project, including, but not limited to, advising Plaintiff incorrectly on completing reports, failing to provide Plaintiff updates on her progress on her components of the special project, and scheduling and attending meetings and conference calls on the special project without Plaintiff.

43.     In February 2015, Plaintiff and Mr. France learned that a clinical psychologist and licensed professional counselor recommended that Cathie France be supervised around the minor child in question. Additionally, Mr. France was advised that he would be subpoenaed to testify in a hearing against Cathie France in *Melissa Anne Owens v. Kevin Heath Vick*, Case No. CL15001629. Since February 2015 to the date of this filing, Cathie France has not been allowed to be alone with the Vick children unsupervised by another adult.

44.     In light of her husband's involvement as an adverse witness to Cathie France in a highly sensitive domestic matter involving allegations of sexual child abuse, it was extremely difficult for Plaintiff to report to Cathie France, knowing many of the details surrounding this issue, Cathie France's sexual history, and its impact on Mr. France and their personal life.

45.     By letter dated February 19, 2015 to VPA, Plaintiff, by counsel, expressed concerns about the escalating visitation dispute between Cathie France and Mr. France, and her natural involvement as Mr. France's wife, and her direct reporting to Cathie France on the project. Plaintiff also advised Cathie France is not fully communicating with her or involving her in the details of many aspects of the project. Plaintiff noted the workplace environment has degraded to

8

the point of having a negative impact on Plaintiff's overall health.  Finally, Plaintiff requested removal from a line of reporting to Cathie France.

46.     By letter dated March 3, 2015, VPA, by counsel, responded to the letter dated February 19, 2015, refusing to accommodate Plaintiff's request to alter the lines of reporting authority.

47.     On March 5, 2015, Plaintiff sought further treatment for severe depression and anxiety due to the workplace environment that had been constructed by VPA and Cathie France.

48.     On March 5, 2015, Plaintiff took a leave of absence as advised by her physician under the Family Medical Leave Act.

49.     On April 2, 2015, over a year after Plaintiff first sought treatment for anxiety, depression, and insomnia caused by her reporting structure at VPA, Plaintiff, by counsel, again requested VPA to remove Cathie France from Plaintiff's chain of command.  Plaintiff also attached a letter dated April 1, 2015 from Dr. Semret T. Mebrahtu, noting Plaintiff remains under the care of Ghent Station Medical Associates and will return to work on June 2, 2015.

50.     On April 9, 2015, Dr. Mebrahtu completed a form entitled, "Certification of Health Care Provider for Employee's Serious Health Condition," noting Plaintiff suffers from anxiety and depression which affects her ability to perform her job functions.

51.     By letter dated May 27, 2015, Plaintiff, by counsel, advised VPA about the current domestic issues with Cathie France and Mr. France, the allegations of sexual abuse against Cathie France, the continued negative impact on Plaintiff's physical and mental health, and again requested VPA to remove Cathie France from Plaintiff's reporting structure.

52.     By letter dated June 4, 2015, Dr. Mebrahtu advised that Plaintiff needs several accommodations to allow her to perform her job, including a different department head and an

office location change. Dr. Mebrahtu further noted Plaintiff remains under the care of Ghent Station Medical Associates and will return to work on August 4, 2015.

53.     In addition, on June 16, 2015, Dr. Huma M. Hyder filled out a Request for Reasonable Accommodation, stating, in part, due to the reporting structure at VPA and associated stress, Plaintiff "has severe difficulty sleeping," "loss of appetite," and difficulty concentrating, thinking, communicating, and working. Dr. Hyder specifically requested Plaintiff to be moved to another department and/or not be required to report to or have involvement with Cathie France at work whatsoever. Dr. Hyder also noted Plaintiff's office is four (4) doors away from Cathie France and re-locating her physical working location to remove the need for daily personal contact is needed.

54.     On July 6, 2015, Mr. Bibbs called Plaintiff to discuss Plaintiff's request for reasonable accommodation. With regards to Plaintiff's request for a change to her reporting structure, Mr. Bibbs advised Plaintiff that "we are unwilling to do that" and instructed Plaintiff to advise VPA of "the role that she feels she is qualified for" based on current publicly advertised VPA employment opportunities.

55.     Over the next several days, Plaintiff engaged in e-mail and telephone conversations with Mr. Bibbs regarding how a change in her position at VPA would impact her salary and benefits, including retirement benefits. Mr. Bibbs advised she will receive the compensation and title for the alternative position and, conversely, stated this is not a demotion. Plaintiff explained, "asking me to do a job that pays less or is not exempt is a negative employment action that will harm me and my family." Mr. Bibbs and others in Human Resources at VPA refused to answer Plaintiff's questions, including questions about her retirement benefits being covered by the potential new position, or provided Plaintiff vague and deficient answers.

56.    By e-mail dated July 20, 2015 from Mr. Bibbs to Plaintiff, Mr. Bibbs provides a list of open positions, including highlighted positions that Plaintiff "may want to consider," but fails to provide any information about how any of these positions would impact Plaintiff's benefits, including her retirement benefits, and gives Plaintiff a deadline of July 22, 2015 (two days) to let him know if she is interested in any of the positions on the attached list.

57.    By e-mail dated July 22, 2015, Plaintiff complied with Mr. Bibbs' deadline, stating, in part, "In lieu of the port not accepting my reasonable request, and as long as I am paid the same salary I currently make and I retain my exempt status, I believe the most professional position similar to my previous position that is currently posted is the Executive Administrative Assistant position reporting to you and James Noel."

58.    By e-mail dated July 29, 2015, Ms. Saxby advised Plaintiff that she is not qualified for the Executive Administrative Assistant position, even though Plaintiff held a similar position for another Authority of the Commonwealth of Virginia over ten years earlier, and instead offered Plaintiff the position of Assistant Operations Manager at Virginia International Terminals, L.L.C. ("VIT"). The offered position is with a separate entity (VIT), is shift work requiring work on nights, weekends, and holidays, involves supervising union labor, and is completely unrelated to Plaintiff's previous work experience. No one at VPA ever advised Plaintiff how any of the positions listed or offered impacted her benefits, including her retirement benefits, despite Plaintiff's repeated inquiries.

59.    On July 31, 2015, Erika Snow, Human Resources Manager of VPA, sent an e-mail to Plaintiff, stating she attempted to call Plaintiff to discuss the Executive Administrative Assistant position, contrary to Ms. Saxby's representation just two days earlier that Plaintiff was not qualified for the position. In her e-mail response, Plaintiff noted she was not made aware that

11

Human Resources was planning to call her and she was unavailable when Ms. Snow called. Plaintiff further expressed her unease regarding Ms. Snow's request for a discussion following Ms. Saxby's prior representation that Plaintiff was not qualified for the position. In order to assuage her concerns, Plaintiff requested that her counsel participate in the call with Ms. Snow, noting her counsel was not available that day and she needed to speak with him the following Monday to determine his availability. By e-mail later that day, Ms. Snow refused to discuss the position with counsel present.

60.     Without any further discussion, by e-mail dated August 5, 2015 at 3:21 p.m., Ms. Saxby notified Plaintiff that Plaintiff's employment with VPA would be terminated as of 5:00 pm on August 5, 2015 for not accepting the position at VIT and for not being willing to meet with Human Resources without her counsel present. Plaintiff was not allowed any opportunity to respond even without her counsel present.

**STATEMENT OF CLAIMS**

**COUNT I:**

**DISCRIMINATION UNDER THE ADA BY
FAILING TO MAKE REASONABLE ACCOMMODATIONS
(42 U.S.C. § 12112(a))**

61.     Plaintiff incorporates by reference and realleges each allegation set forth above.

62.     Plaintiff was qualified for the position of Economic Development Manager with VPA as she satisfied the requisite skill, experience, education, and other job-related requirements of the position.

63.     Plaintiff was able to perform the essential functions of the position of Economic Development Manager with VPA with or without reasonable accommodation.

12

64.    Plaintiff suffered from anxiety and depression, and consequential severe difficulty sleeping and loss of appetite, a physical or mental impairment under the ADA, and Plaintiff had a record of such an impairment.

65.    Plaintiff's impairments substantially limited her ability to concentrate, think, communicate, and work.

66.    Plaintiff, therefore, suffered from a disability as defined under the ADA.

67.    Plaintiff repeatedly requested, and Plaintiff's physicians also requested, Plaintiff to be moved to another department and/or not be required to report to or have involvement with Cathie France at work, and an office location change.

68.    VPA continually denied Plaintiff's requests for reasonable accommodation for no valid reason.

69.    The requested accommodations did not impose an undue hardship on the operation of business of VPA.

70.    VPA further failed to engage in an informal, interactive process with Plaintiff.

71.    VPA did not provide Plaintiff a reasonable accommodation by offering Plaintiff a position at VIT as the position was not comparable to Plaintiff's current position at VPA.

72.    Due to the unlawful actions of VPA, Plaintiff suffered lost wages and benefits, emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to her reputation, and loss of enjoyment of life.

## COUNT II:

### DISCRIMINATION UNDER THE ADA BY RETALIATION
### (42 U.S.C. § 12203(a))

73.     Plaintiff incorporates by reference and realleges each allegation set forth above.

74.     On August 5, 2015, VPA terminated the employment of Plaintiff because Plaintiff opposed VPA's refusal to provide Plaintiff reasonable accommodations.

75.     Due to the unlawful actions of VPA, Plaintiff suffered lost wages and benefits, emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to her reputation, and loss of enjoyment of life.

## COUNT III:

### DISCRIMINATION UNDER THE ADA BY
### COERCION, INTIMIDATION, OR INTERFERENCE
### (42 U.S.C. § 12203(b))

76.     Plaintiff incorporates by reference and realleges each allegation set forth above.

77.     On July 10, 2014, Plaintiff was presented with a memorandum from Mr. Held, Ms. Saxby, and Mr. Bibbs entitled, "Warning." The memorandum addresses Plaintiff's complaints and concerns regarding her relationship with and line of reporting to Cathie France. The memorandum further describes Plaintiff's requests for accommodation as "insubordinate and unacceptable" and "it should immediately cease and desist." Finally, the memorandum threatens Plaintiff with termination and if she continues to make complaints regarding her reporting structure, she "should consider looking elsewhere for employment." Plaintiff was instructed to sign the memorandum.

78.     This memorandum evidences an effort by VPA to coerce, intimidate, threaten, or interfere with Plaintiff in the exercise or enjoyment of and on account of her having exercised or enjoyed her rights under the ADA.

14

79.     Due to the unlawful actions of VPA, Plaintiff suffered emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, and loss of enjoyment of life.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Stephanie S. France, respectfully requests that this Court:

A.     Enter judgment in her favor and against Defendant, Virginia Port Authority;

B.     Declare the acts and practices complained of herein are in violation of Plaintiff's rights as secured by the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*;

C.     Enjoin Defendant from engaging in such unlawful employment practice;

D.     Order such affirmative action as may be appropriate, including, but not limited to, reinstating Plaintiff to the position of Economic Development Manager/Port Incentive Administrator, with the same seniority status, or a comparable position within the Virginia Port Authority or, in the alternative, awarding Plaintiff front pay;

E.     Award her all back pay and benefits, including salary increases, bonuses, vacation pay, and health insurance, with interest on same running from August 5, 2015 until the date a final judgment is entered for her;

F.     Award her money damages for the emotional distress and reputational damages caused by the unlawful actions of Defendant;

G.     Award her punitive damages;

H.     Award her reasonable attorneys' fees and costs;

I.     Award her a separate amount to offset the adverse tax effects of lump sum payments of damages and/or back or front pay;

J.     Award her pre- and post-judgment interest on any monetary award;

K.     Award all other such equitable relief as may be appropriate to effectuate the purposes of 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,
STEPHANIE S. FRANCE

By: _____
Counsel

James B. Thorsen
VSB No. 18113
Jesse A. Roche
VSB No. 82579
Attorneys for Stephanie S. France
THORSEN HART & ALLEN, LLP
5413 Patterson Avenue, Suite 201
P. O. Box 17094
Richmond, VA 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: jthorsen@thalawfirm.com
E-mail: jroche@thalawfirm.com